**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 16-61363-Civ-COOKE/TORRES

FRANCISCO BERMUDEZ and
AURORA DELGADILLO,

Plaintiffs,

v.

AFR ENVIRONMENTAL CORPORATION
ACON INDUSTRIAL CORPORATION and
ADESH RAMROOP,

Defendants.
_______________________________________/

**REPORT AND RECOMMENDATION**
**ON PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AND FOR JUDGMENT OR ALTERNATIVELY, MOTION FOR CONTINUANCE**

This matter is before the Court on Francisco Bermudez and Aurora Delgadillo's ("Plaintiffs") motion to enforce the settlement agreement and for a judgment of $50,000, or alternatively, a motion for continuance against AFR Environmental Corporation, Acon Industrial Corporation, and Adesh Ramroop (collectively, "Defendants"). [D.E. 34]. On April 3, 2017, Defendants timely filed their response. [D.E. 37]. After due consideration of the motions, responses, and the record in this case, the Court finds that Plaintiffs' motions should be **DENIED**.

# *I. ANALYSIS*

## *A. Motion to Enforcement Settlement and for Judgment of $50,000*

The gist of Plaintiffs' first motion is to (1) enforce a settlement agreement with Defendants, (2) enter judgment in favor of Plaintiffs against Defendants in the amount of $50,000, and (3) reserve jurisdiction to determine reasonable attorneys' fees and costs in connection with enforcing the parties' settlement agreement and collecting on the judgment as provided for in the settlement agreement. On January 16, 2016, the parties' respective counsel reached a tentative settlement in principal, as memorialized in an email exchange. Defendants sent a draft settlement agreement and Plaintiffs responded the same day confirming the agreement. The draft agreement left placeholders for Plaintiffs' counsel to include the allocation of the settlement funds as between Plaintiffs and Plaintiffs' counsel. But, Plaintiffs' counsel failed to return the draft agreement and did not communicate with Defendants until nearly two months later on March 6, 2017.

From March 6 through March 10, 2017, the parties exchanged a flurry of emails with multiple revisions to the proposed settlement agreement. In total, eight drafts were exchanged before the parties reached an impasse. The final draft sent by Plaintiffs' counsel was sent on the evening on March 9, 2017 and purportedly contained only those terms that were originally set forth in Defendants January 16, 2017 settlement email.

On March 11, 2017, Plaintiffs filed their motion to approve the settlement [D.E. 31] and to seek the Court's approval of the same settlement terms as agreed to in the January 16, 2017 email. Plaintiffs contend that the motion was intended to resolve the case without any further conflict with Defendants by seeking approval of the terms originally agreed to between the parties. Defendants filed their response to Plaintiffs' motion two days later [D.E. 33] to clarify the circumstances leading up to Plaintiffs' unilateral decision to file a motion to approve the settlement and to note that the parties had not memorialized their mutual understanding in a written settlement agreement. Defendants further explained that while they are willing to consummate the settlement, they will not join Plaintiffs in a motion for approval nor take any position as to the fairness of the settlement and the allocation of the settlement funds.

As part of enforcing the settlement agreement, Plaintiffs contend that the terms of the originally agreed upon settlement terms provide for a $50,000 penalty plus fees and costs if Defendants oppose approval of the settlement:

> Defendants will not oppose approval; otherwise $50k consent judgment plus fees and costs in connection with enforcement and collection.

Plaintiffs argue that this term was included because of defense counsel's reoccurring practice in prior cases of filing motions and responses with the court opposing the parties' settlement agreements. Because Defendants are allegedly opposing the enforcement of the settlement agreement in this case, Plaintiffs request that the

Court enforce the agreed terms, and enter judgment in favor of Plaintiffs in the amount of $50,000.

In response, Defendants argue that the entirety of the parties' settlement was predicated upon the execution of a mutually acceptable agreement and release as a condition precedent to the payment of the settlement funds. As such, Defendants suggest that the penalty provision is inapposite because Defendants have never once opposed the Court's approval of the settlement. Instead, Defendants claim that they are ready, willing, and able to execute a mutually acceptable settlement agreement and release as provided in the originally agreed upon terms in their January 16, 2017 correspondence.

Defendants further argue that the true reason Plaintiffs are seeking to impose the $50,000 penalty is because Defendants refuse to partake in the approval process – *i.e.* a joint motion for approval to the Court. Defendants have purportedly advised Plaintiffs on multiple occasions that while they do not wish to join in the approval process, they will not stand in the way of the Court approving the settlement. Defendants further contend that they take no position as to the fairness of the settlement or the allocation of the settlement funds. Plaintiffs allegedly demand that Defendants join in the motion to approve, both as to the settlement itself and the allocation of the settlement funds. Therefore, the primary issue in Plaintiffs' motion for a judgment of $50,000 boils down to whether a failure to join in the

approval process is akin to Defendants opposing approval of the settlement, as provided in the penalty provision of the originally agreed upon settlement terms.[1]

The reasoning in *Garcon v. T.W. Food Distributors, Inc.*, No. 9:16-cv-81635 (S.D. Fla. March 28, 2017) is instructive on this issue. In *Garcon*, Judge Middlebrooks approved the parties' settlement agreement, dismissed the case with prejudice, and denied the plaintiff's motion for sanctions [D.E. 67] on the basis that any party may file a motion to approve an FLSA settlement agreement instead of a joint motion. As Judge Middlebrooks explained, only one party is needed to file a motion to approve an FLSA settlement:

> The end result was that Plaintiff filed a Motion to Approve a Settlement Agreement instead of a join motion. Because one party may file a motion to approve an FLSA settlement agreement, the additional expenditure of time after a settlement was reached was not solely due to one side's tactics.

*See id.*; *see also Munoz v. Russo Battista, P.L. et al.*, No. 14-cv-60613 [D.E. 26] (S.D. Fla. May 5, 2014) ("[A]ny party may move for approval of a written settlement agreement in this action. The Court will then determine whether the settlement is fair and reasonable, and will hold a hearing on that issue if necessary.").

The Eleventh Circuit's decision in *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013) supports the same conclusion. In *Nall*, the Eleventh Circuit

---

1 Defendants' counsel notes that while he often agrees to file a joint motion for approval in these types of cases, he simply is unwilling to join in such a motion given the present circumstances. Yet, this position is allegedly irrelevant because it will not stand in the way of the Court's approval if in fact the Court determines that the settlement and Plaintiffs' counsel's proposed allocation of the settlement funds is fair and reasonable.

explained that ""[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees." *Id.* (quoting *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1352 (11th Cir. 1982)). "The first is under the supervision of the Secretary of Labor" and the second is when the parties present a proposed settlement to the district court and the district court enters a stipulated judgment after scrutinizing the settlement for fairness. *Nall*, 723 F.3d at 1306 (citations omitted). The Eleventh Circuit further held that "*Lynn's Food* did not define the term 'stipulated judgment," but noted that "it takes two (or more) to stipulate, and a judgment to which one side objects is not a stipulated one." *Id.* at 1308.

The same reasoning applies in this case. Defendants have not opposed the entry of a settlement as explained in *Nall*; they have merely refused to join the Plaintiffs in a motion for approval. *See Patel v. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014) ("The Eleventh Circuit has held that when one party objects to a FLSA settlement, then a district court cannot enter an order approving it.") (citing *Nall,* 723 F.3d at 1308). And while Defendants do not specifically explain why they refuse to participate in the joint motion for approval, they have made it abundantly clear that they do not oppose settling with Plaintiffs in accordance with the originally agreed upon terms in the January 16, 2017 email. Defendants' position is not akin to opposing the settlement because as the Eleventh Circuit explained in *Nall*, "a judgment to which one side objects is not a stipulated one." *Nall,* 723 F.3d at 1308.

In other words, the Defendants refusal to join the Plaintiffs in a joint motion for approval is not equivalent to an objection to the settlement. Because Defendants have simply refused to participate in a joint motion for approval, they have not opposed approval of the settlement and the $50,000 penalty provision does not apply.

Furthermore, whether the Defendants partake in a joint motion for approval is unnecessary because it is ultimately the Court which must decide whether to approve of the fairness of the settlement and the allocation of the settlement funds. In fact, it is the Court's responsibility to scrutinize the settlement and ultimately decide whether the settlement is a fair allocation between the plaintiffs and their counsel. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1353. Because of the substantial authority holding that only one party is required to approve an FLSA settlement agreement, Plaintiffs' motion to enforce the settlement agreement and to seek a judgment of $50,000 should be **DENIED**.

***B. Motion for Continuance and a Revised Scheduling Order***

Alternatively, Plaintiffs seek relief in the form of a continuance of this action and a revised Scheduling Order so that the parties may expeditiously finish discovery, dispositive motions, and proceed to trial. Plaintiffs argue that good cause and exceptional circumstances merit the continuance of *all* pretrial conference deadlines, trial, and all other hearings in this action. Plaintiffs further contend that their motion is timely because they filed it at the first instance in which they foresaw an issue with the parties' ability to follow the deadlines contained in the Court's

Order Setting Civil Trial Date. [D.E. 17]. In response, Defendants do not oppose Plaintiffs' requested relief because if Plaintiffs "refuse to sign a mutually acceptable settlement agreement, then the case should proceed to trial" and the motion to enforce and approve the settlement should be denied accordingly. [D.E. 31, 33].

"When a party files a motion to extend a deadline set in a scheduling order that has already expired, Federal Rule of Civil Procedure 16(b) is the proper guide for determining whether to modify the scheduling order." *De Varona v. Disc. Auto Parts, LLC*, 285 F.R.D. 671, 672 (S.D. Fla. 2012) (citing *Southern Grouts & Mortars, Inc. v. 3M Co.,* 575 F.3d 1235, 1241 (11th Cir. 2009)). "In such cases, the moving party is required to show good cause" which precludes "modification unless the schedule 'cannot be met despite the diligence of the party seeking the extension.'" *De Varona*, 285 F.R.D. at 672 (citations omitted); *see also Sosa v. Airprint Sys.,* 133 F.3d 1417, 1418 n. 2 (11th Cir. 1998) ("[W]hen a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused."); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992) ("If [a] party was not diligent, the [good cause] inquiry should end.").

Good cause to modify a Scheduling Order is often denied due to carelessness, oversight, inadvertence, or a failure to act diligently upon information obtained from an opposing party. *See Johnson,* 975 F.2d at 609 ("[C]arelessness is not compatible

with a finding of diligence and offers no reason for a grant of relief" under Rule 16); *Integra Lifesciences I, Ltd. v. Merck KGaA,* 190 F.R.D. 556, 560 (S.D. Cal. 1999) (failure to diligently act upon information obtained from opposing party during discovery does not constitute good cause); *Carnrite v. Granada Hosp. Group, Inc.,* 175 F.R.D. 439, 448 (W.D.N.Y. 1997) ("'inadvertence' or oversight is not good cause for purposes of Rule 16(b)"); *Tschantz v. McCann,* 160 F.R.D. 568, 572 (N.D. Ind. 1995) (failure to pay attention to discovery received does not constitute good cause).

Here, Plaintiffs' motion for a continuance is undermined by the fact that the parties already reached a settlement agreement on January 16, 2017. [D.E. 31-1]. On that date, Defendants emailed Plaintiffs a long list of material items pertinent to the settlement agreement, including the proposal that $25,000 would be used to settle any and all damages, costs and attorneys' fees. The email also included the date for disbursement of the settlement funds, language on mutual general releases, indemnification provisions, and terms relating to confidentiality. Approximately four minutes after Defendants' email on January 16, 2017, Plaintiffs confirmed that both parties agreed to the settlement terms. It was at this point that the parties reached a meeting of the minds. *See Specialty Disease Mgmt. Servs., Inc. v. Aids Healthcare Found.*, 2003 WL 25608009, at *3-4 (M.D. Fla. Oct. 21, 2003) (holding "[a]lthough settlement agreements are favored by the law, there must be a meeting of the minds as to the essential settlement terms in order for settlement agreements to be enforceable.") (citing *Schlosser v. Perez,* 832 So. 2d 179, 182 (Fla. 2d DCA 2002)).

Throughout Plaintiffs' motion for a continuance, Plaintiffs noticeably omit any discussion of how good cause is shown when the parties have already settled the case. Plaintiffs' motion is also unclear because Plaintiffs filed a motion for settlement approval on March 11, 2017 [D.E. 31], which would make any request for a continuance moot. Despite these problems in Plaintiffs' motion, "[c]ompetent substantial evidence exists which demonstrates that there was a meeting of the minds and the parties entered into an enforcement settlement agreement" on January 16, 2017. *BP Prod. N. Am., Inc. v. Oakridge at Winegard, Inc.*, 469 F. Supp. 2d 1128, 1136 (M.D. Fla. 2007). And while Defendants argue that "[i]n the event plaintiffs refuse to sign a mutually acceptable settlement agreement, then the case should proceed to trial," the law is clear that a formal settlement agreement is unnecessary under both federal and Florida law. *See Skrtich v. Thornton*, 2003 WL 24845555, at *2 (M.D. Fla. Mar. 28, 2003) ("Oral settlement agreements are enforceable under both federal and Florida law.").

As Judge Adams has explained, Florida courts have clarified how to determine whether an enforcement settlement agreement was reached:

> Settlement agreements are favored as a means to conserve judicial resources. Courts will enforce them when it is possible to do so. *See Long Term Mgmt., Inc. v. Univ. Nursing Ctr., Inc.,* 704 So. 2d 669, 673 (Fla. 1st DCA 1997). They are interpreted and governed by the law of contracts. *Williams v. Ingram,* 605 So. 2d 890 (Fla. 1st DCA 1992). The party seeking to enforce a settlement agreement bears the burden of showing the opposing party assented to the terms of the agreement. *Carroll v. Carroll,* 532 So. 2d 1109 (Fla. 4th DCA 1988), *rev. denied,* 542

> So. 2d 1332 (Fla. 1989). To compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element. *Don L. Tullis and Assoc., Inc. v. Benge,* 473 So. 2d 1384 (Fla. 1st DCA 1985). Uncertainty as to nonessential terms or small items will not preclude the enforcement of a settlement agreement . . . "[T]he making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing." *Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.,* 302 So. 2d 404, 407 (Fla. 1974) (quoting *Gendzier v. Bielecki,* 97 So. 2d 604, 608 (Fla. 1957)).

*Id*. at *2.

The email exchange between the parties on January 16, 2017 constituted a settlement agreement as each and every term proffered by the Defendants was accepted by Plaintiffs. *See Bruton v. Carnival Corp*., 2012 WL 1627729, at *2 (S.D. Fla. May 2, 2012) ("A contract results if the acceptance of an offer is absolute and unconditional, and identical with the terms of the offer.") (citing *Ribich v. Evergreen Sales & Serv., Inc.,* 784 So. 2d 1201, 1202 (Fla. 2d DCA 2001); *Giovo v. McDonald,* 791 So. 2d 38, 40 (Fla. 2d DCA 2001) (what is an "essential term" of a contract differs according to the circumstances, but it must include the terms specified in an offer in order to make a contract)). It was only after this agreement that Defendants sought to proceed with a written settlement agreement that Defendants sought to include additional language with respect to the allocation of the settlement as between the Plaintiffs and Plaintiffs' counsel. *See, e.g., Bruton v. Carnival Corp*., 2012 WL 1627729, at *2 (S.D. Fla. May 2, 2012) (finding that the parties agreed to a

settlement because there was no indication that later disputes on release language were conditioned upon the settlement agreement). Thus, the parties' settlement negotiations on immaterial items are insufficient to furnish good cause under Rule 16(b)(4).[2] Accordingly, Plaintiffs' motion for a continuance should be **DENIED** in light of the parties' settlement.

## *II. CONCLUSION*

For the foregoing reasons, this Court **RECOMMENDS** that Plaintiffs' motion to enforce the settlement agreement and for a judgment of $50,000 [D.E. 34] be **DENIED** and that Plaintiffs' motion for a continuance of pretrial deadlines be **DENIED**. Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the

---

[2] It is well settled that ongoing settlement discussions are insufficient to furnish good cause to modify the Court's Scheduling Order under Rule 16(b)(4). *See Jasper Wood Prod., LLC v. Jordan Scrap Metal, Inc.*, 2014 WL 3720530, at *5 (S.D. Ala. July 25, 2014) ("[D]elays attendant to settlement negotiations do not furnish good cause for modifying scheduling orders pursuant to Rule 16(b)(4).") (citing *Gerawan Farming, Inc. v. Rehrig Pacific Co.,* 2013 WL 645741, *5 (E.D. Cal. Feb. 21, 2013) ("[S]ettlement negotiations are not good cause to modify a Scheduling Order"); *Rybski v. Home Depot USA, Inc.,* 2012 WL 5416586, *2 (D. Ariz. Oct. 17, 2012) ("[D]istrict courts have concluded that settlement conferences or discussions do not constitute good cause to modify a scheduling order"); *Oliver v. M/V Barbary Coast,* 2012 WL 642342, at *1 (S.D. Ala. Feb. 28, 2012) ("[T]he pursuit of settlement—alone—is generally not good cause to justify the extension of deadlines in a Rule 16(b) scheduling order"); *Home Design Services, Inc. v. Trumble,* 2010 WL 1435382, at *10 (D. Colo. Apr. 9, 2010) (where plaintiff deferred discovery costs in anticipation of productive settlement conference, observing that "[w]hile I can appreciate the pragmatism underlying such a strategy, counsel's misplaced optimism does not equate to good cause under Rule 16(b)"); *United Stars Industries, Inc. v. Plastech Engineered Products, Inc.,* 2007 WL 5462421, at *1 (W.D. Wis. Feb. 14, 2007) ("Plaintiff has not shown good cause for the late amendment, only that it preferred to engage in settlement negotiations and let the deadlines go by. Although this court encourages settlement, it expects counsel to observe the deadlines set by the court.")).

parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g.*, *Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 13th day of April, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge